MARC J. WINTHROP – State Bar No. 63218
CHARLES LIU – State Bar No. 190513
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Ste 400
Newport Beach, CA 92660
mwinthrop@winthropcouchot.com
cliu@winthropcouchot.com
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

General Insolvency Counsel for
Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>MODTECH HOLDINGS, INC.<br>a Delaware Corporation<br><br><br><br>Debtor and Debtor-in-Possession | **Case No.** 6:08-bk-24324-TD<br><br>Chapter 11 Proceeding<br><br>**DEBTOR'S MOTION FOR ORDER APPROVING COMPROMISE OF CONTROVERSY WITH J&T PLASTERING, INC; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT THEREOF**<br><br>[No Hearing Set] |

1          Modtech Holdings, Inc., a Delaware corporation, the debtor and debtor-in-possession in the

2    above entitled Chapter 11 proceeding (the "Debtor"), hereby moves this Court for an order

3    approving compromise of controversy with J&T Plastering, Inc. ("J&T") pursuant to Rule 9019(a)

4    of the Federal Rules of Bankruptcy Procedure, pursuant to the Settlement Agreement and Mutual

5    Release (the "Agreement") between the Debtor and J&T (the "Motion"). A copy of the

6    Agreement is attached as Exhibit "1" to the Declaration of Dennis Shogren filed in support hereof

7    (the "Shogren Declaration").

8          This Motion is made and based upon the foregoing allegations and representations, the

9    Memorandum of Points and Authorities attached hereto, the Shogren Declaration filed

10   concurrently herewith, the pleadings, papers and other documents on file in this Chapter 11 case,

11   and upon any additional evidence, both oral and documentary, that may be presented to this Court

12   at or before the time of the hearing on this Motion.

13          **IF YOU DO NOT OPPOSE THE MOTION DESCRIBED ABOVE, YOU NEED**

14   **TAKE NO FURTHER ACTION. HOWEVER, IF YOU OBJECT TO THE MOTION,**

15   **PURSUANT TO LOCAL BANKRUPTCY RULE 9013-1(f)(1), OBJECTIONS MUST BE**

16   **FILED WITH THE COURT WITHIN FIFTEEN (15) DAYS OF THE DATE OF SERVICE**

17   **OF THIS NOTICE. YOU MUST FILE YOUR OBJECTION AND REQUEST FOR A**

18   **HEARING WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT,**

19   **LOCATED AT 3420 TWELFTH STREET, RIVERSIDE, CALIFORNIA 92501. YOU**

20   **MUST SERVE A COPY OF YOUR OBJECTION TO THE MOTION, AND REQUEST**

21   **FOR A HEARING, UPON THE DEBTOR'S COUNSEL AT THE MAILING ADDRESS**

22   **INDICATED IN THE UPPER LEFT-HAND CORNER OF THIS NOTICE, AND UPON**

23   **THE OFFICE OF THE UNITED STATES TRUSTEE LOCATED AT 3685 MAIN STREET,**

24   **RIVERSIDE, CALIFORNIA 92501. UPON RECEIPT OF A WRITTEN OBJECTION AND**

25   **REQUEST FOR A HEARING, THE DEBTOR'S COUNSEL WILL OBTAIN A HEARING**

26   **DATE AND GIVE APPROPRIATE NOTICE THEREOF. ANY FAILURE TO TIMELY**

27   **FILE AND SERVE OBJECTIONS MAY RESULT IN ANY SUCH OBJECTIONS BEING**

28   **WAIVED.**

1

2    **WHEREFORE,** the Debtor prays that this Court enter an Order approving the Agreement

3    pursuant to Bankruptcy Rule 9019(a), and such other and further relief as the Court deems just and

4    appropriate.

5

6    DATED:  May 12, 2009                    **WINTHROP COUCHOT**
                                             **PROFESSIONAL CORPORATION**

7

8                                            By:  _/s/ Marc J. Winthrop_____
                                                  Marc J. Winthrop
9                                                 Charles Liu
                                             General Insolvency Counsel for
10                                           Debtor and Debtor-in-Possession

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**I**

2

**PRELIMINARY STATEMENT**

3        Modtech Holdings, Inc., the debtor and debtor-in-possession herein, (the "Debtor" or

4    "Modtech") is in the business of designing, manufacturing, marketing, and installation of modular

5    classrooms, commercial, and light industrial modular buildings.

6        The Debtor is a plaintiff in an action against J&T Plastering, Inc. ("J&T") pending before

7    the Los Angeles County Superior Court entitled <u>Modtech Holdings, Inc. v. J&T Plastering, Inc.</u>,

8    Case No. BC390871 (the "State Court Action").

9        To avoid the expense and uncertainty of litigation, the Debtor and J&T have agreed to

10    settle all their disputes pursuant to the Settlement Agreement and Mutual Release (the

11    "Agreement") between the Debtor and J&T (the "Motion").  A copy of the Agreement is attached

12    as Exhibit "1" to the Declaration of Dennis Shogren filed in support hereof (the "Shogren

13    Declaration").

14

**II**

15

**BACKGROUND**

16    **A.    The Debtor**

17        The Debtor was founded in 1982 with its initial business consisting of purchasing

18    unfinished and outdated classroom shells and performing installation work.  The Debtor

19    subsequently changed its business to the design, manufacturing, marketing and installation of

20    classroom and other custom modular projects.  In February 1999, the Debtor merged with SPI

21    Holdings Inc., a Colorado corporation, which designed and manufactured commercial and light

22    industrial modular buildings in Arizona, Texas and California.  In March 1999, the Debtor acquired

23    Coastal Modular Buildings, Inc., and in March 2001 the Debtor acquired Innovative Modular

24    Structures.  Both companies were based in central Florida.  All of the acquired companies have

25    been fully integrated into the Debtor.

26        The Debtor was a leading provider of modular classrooms in California and Florida and

27    was a significant provider of commercial and light industrial modular buildings in California,

28    Florida, Arizona, Nevada and other neighboring states.  The Debtor also produced other modular

building products such as single family and multi-unit residences, military training buildings, and concrete block restroom facilities.

In California, the Debtor markets and sells modular classrooms primarily to school districts. Sales of classrooms to individual California school districts accounted for approximately 49.9% of net sales during the year ended December 31, 2007. The Debtor also designs and builds modular buildings to customer specifications for a wide array of uses beyond California classrooms, including residential, governmental, healthcare, educational, airport and correctional facilities; office and retail space; daycare centers; libraries; churches; construction trailers; golf clubhouses; police stations; convenience stores; fast food restaurants; classrooms and sales offices. The Debtor also sells classrooms to the State of California and leasing companies, both of which lease the classrooms principally to school districts. The Debtor markets modular classrooms directly and its other products are sold through a network of independent dealers.

A substantial portion of the Debtor's sales require bid, performance and payment bonds to ensure that the contracts will be performed and completed in accordance with contract terms and conditions, and to assure that subcontractors and suppliers will be paid. From time to time the Debtor has had difficulty in obtaining bonding for certain large projects.

**B.    The Dispute with J&T**

J&T is a plastering subcontractor to the Debtor on an elementary school project located in Watsonville, California, known as the Landmark Elementary School. Modtech alleges that there were issues with the quality of workmanship regarding the work performed by J&T at the school. J&T attempted to correct the problems, but was unable to do so to the satisfaction of the Debtor and the owner of the school. Accordingly, on May 15, 2008, after efforts were made to resolve the stucco issues with J&T, the Debtor filed the State Court Action against J & T for breach of contract and other theories.

Specifically, the Debtor contends that the stucco systems provided by J&T were defective in labor, materials and workmanship, and not in conformance with the plans and specifications, nor the standard of care in the industry for such application. The defects consisted of unreasonable cracking at the doors and windows at all six buildings, a soft/chalky color coat, unsound color

1   application of the color coat, and poor patching work that was performed to try and correct some of

2   the cracking and other related conditions.  The Debtor sought reimbursement of the sums it had to

3   credit/pay out to the owner in connection with this issue in the sum of $142,360.00.  Furthermore,

4   the Debtor seeks recovery of the sum of $45,139.72 as a 1/8 share of the attorney's fees, costs and

5   expert fees it incurred in the underlying action with the owner, which represents a fair evaluation of

6   those fees, costs and expenses attributable to the stucco issue.  Finally, the Debtor, in accordance

7   with the terms of the written subcontract agreement, sought recovery of any attorney's fees, costs

8   and expert expenses incurred in prosecuting this action against J&T.

9   **C.    Summary of Settlement with J&T**

10          J&T agrees to pay the Debtor $75,000 in exchange for the Debtor's dismissal of the State

11  Court Action.  By the Agreement, the Debtor and J&T will provide mutual releases and a

12  California Civil Code section 1542 waiver to each other, and each party is to bear its own fees.

13  The foregoing is just a summary of the Agreement and should not be taken as a substitute for the

14  terms of the Agreement, attached to the Shogren Declaration as Exhibit "1."

15                                   **III.**

16          **APPROVAL OF THE SETTLEMENT CONTAINED IN THE**

17          **AGREEMENT IS IN THE BEST INTERESTS OF THE ESTATE**

18          Rule 9019(a) of the Federal Rules of Bankruptcy Procedure provides:

19              On motion of the trustee and after notice and a hearing, the court may
                approve a compromise or settlement.  Notice shall be given to
20              creditors, the United States Trustee, the debtor and indenture trustees
                as provided in Rule 2002 and to any other entity as the court may
21              direct.

22  Fed. R. Bankr. P. 9019(a).

23          "The law favors compromise and not litigation for its own sake…"  In re A & C Properties,

24  784 F.2d 1377, 1381 (9th Cir. 1986); In re Michael, 183 B.R. 230, 233 (Bankr.D.Mont. 1995) ("it

25  is also well established that the law favors compromise") citing In re Blair, 538 F.2d 849, 851 (9th

26  Cir.1976); In re Stein, 236 B.R. 34, 37 (D.Or. 1999) ("Pursuant to Bankruptcy Rule 9019(a),

27  compromises are favored in bankruptcy"); In re Pierce Packing Co., 1994 WL 831374, *2

28  (Bankr.D.Mont. 1994) ("it is also well established that the law favors compromise").

1    The Ninth Circuit has recognized that "[t]he bankruptcy court has great latitude in

2    approving compromise agreements." In re A & C Properties, 784 F.2d 1377, 1380-81 (9th Cir.

3    1986) cert. denied 479 U.S. 854 (1986). "The purpose of a compromise agreement is to allow the

4    debtor and the creditors to avoid the expenses and burdens associated with litigating sharply

5    contested and dubious claims." A & C Properties, 784 F.2d at 1380-81.

6          Pursuant to Bankruptcy Rule 9019(a), compromises are favored in
    bankruptcy; therefore, the decision of the bankruptcy judge to approve or

7        disapprove the compromise of the parties rests in his or her sound discretion.
    The law is settled that the proper standard of review for an order approving a

8        settlement by a trustee in bankruptcy is abuse of discretion. In re Sassalos, 160
    B.R. 646, 653 (D.Or.1993) (Frye, J.), citing 9 Collier on Bankruptcy, § 9019.03

9        (15th ed.). In In re Sassalos, this court stated:

10         The standards for approval of a proposed settlement have been enunciated in
    the Ninth Circuit, and in order to determine whether a proposed settlement is fair

11       and equitable, the bankruptcy court must consider four factors:

12         (a) The probability of success in the litigation; (b) the difficulties, if any, to
    be encountered in the matter of collection; (c) the complexity of the litigation

13       involved, and the expense, inconvenience and delay necessarily attending it; (d)
    the paramount interest of the creditors and a proper deference to their reasonable

14       views in the premises.

15   In re Stein, 236 B.R. 34, 37 (D.Or. 1999).

16       In approving a compromise, a bankruptcy court must find that the compromise is fair and

17   equitable and that the negotiations between the parties were conducted in good faith. A & C

18   Properties. The "bankruptcy court need not conduct an exhaustive investigation into the validity of

19   the asserted claim." Matter of Walsh Const, 669 F.2d 1325, 1328 (9th Cir. 1982); Cf. Blair, supra,

20   538 F.2d at 851-52 (bankruptcy court need not conduct a mini-trial on the merits of claims sought

21   to be compromised in a bankruptcy); In re Edwards, 228 B.R. 552, 569 (Bankr.E.D.Pa. 1998) ("The

22   court's role is not to conduct a trial or mini-trial, or to decide the merits of individual issues.")

23       "Rather than conducting a detailed evaluation of the merits of the state court action, the

24   bankruptcy court's function is to examine the proposed settlement to determine if it falls below

25   the lowest point in the range of reasonableness." In re Milden, 111 F.3d 138, 1997 WL 189302,

26   *3 (9th Cir. 1997); Newman v. Stein, 464 F.2d 689, 693 (2d Cir.1972) ("The responsibility of the

27   bankruptcy judge...is not to decide the numerous questions of law and fact raised...but rather to

28   canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of

1    reasonableness.'"); In re United Shipping Co., 1989 WL 12723, *9 (Bankr.D.Minn. 1989) ("the

2    court need only examine the issues to determine that the settlement does not fall below the lowest

3    point in the range of reasonableness").

> [A]lthough we may consider a creditor's objection to the proposed compromise, the objection is not controlling, and will not bar approval, when a review of the settlement shows it does not "fall below the lowest point in the range of reasonableness." When assessing a compromise and settlement, we are not obliged to determine and rule upon disputed facts and questions of law, but rather only to "canvass" the issues. A trial or "mini trial" on the merits is not required. Further, the Court need not conduct a wholly independent investigation in formulating its opinion as to the reasonableness of a settlement. We may give weight to the informed judgments of the trustee or debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise. And indeed, a Court may approve a settlement even if it believes that the trustee or debtor-in-possession ultimately would be successful at trial. Finally, we must consider the principle that "the law favors compromise."

13   In re Drexel Burnham Lambert Group, Inc., 134 B.R. 499, 505 (Bankr.S.D.N.Y. 1991) (citations

14   omitted); In re Schmitt, 215 B.R. 417, 423 (9th Cir. BAP 1997) ("When assessing a compromise,

15   courts need not rule upon disputed facts and questions of law, but rather only canvass the issues.

16   A mini trial on the merits is not required.")

17       For the reasons set forth hereinbelow, the Debtor believes that the Agreement is fair and

18   reasonable, and should be approved by the Court.

19       A.    The probability of success in the litigation.

20       While the Debtor contends that it had a high probability of successfully proving at trial that

21   J&T's work at the subject school was deficient, and that the Debtor's out-of-pocket costs, and

22   other damages were reasonable, there remained the possibility that the Debtor might not recover

23   all of the damages it sought against J&T had it proceeded forward, and the settlement amount took

24   that into consideration.

25       B.    The difficulties, if any, to be encountered in the matter of collection.

26       The significant reason for the Debtor's decision to settle, rather than litigate its claims at

27   trial with J&T had to do specifically with the problems of collection. All information available

28   highly suggested that even if the Debtor were successful in obtaining a judgment against J&T for

1  the full amount, including legal fees and costs, J&T did not have the financial ability to satisfy the

2  judgment, at any dollar amount. The Debtor's litigation counsel was successful in getting J&T's

3  insurance carrier involved in the matter, and based upon the language of the policy, the Debtor was

4  further successful in obtaining an offer from the carrier on behalf of J&T to pay the settlement

5  sum, which the Debtor contends is in the range of the insurance carrier's responsibility, given the

6  policy limitations relating to work product exclusion, etc.

7        C.    The complexity of the litigation involved, and the expense, inconvenience and

8  delay necessarily attending it.

9        The issues to be decided at trial, if the matter were to proceed to trial, would have related to

10  the quality of the stucco work performed by J&, the remediation necessary to bring the quality of

11  the work up to reasonable standards, and the cost of such remediation. This was going to require

12  expert testimony, and was expected to take 3-4 days to try. If in fact the matter were to proceed to

13  trial, it was expected to cost between $15,000 and $20,000 in fees and costs.

14                                    **IV**

15                              **CONCLUSION**

16        For the foregoing reasons, the Debtor would respectfully request that the Court grant the

17  relief prayed for herein.

18  DATED: May 12, 2009                    **WINTHROP COUCHOT**
                                           **PROFESSIONAL CORPORATION**
19

20
                                           By:  /s/ Marc J. Winthrop
21                                              Marc J. Winthrop
                                                Charles Liu
22                                              General Insolvency Counsel for
                                                Debtor and Debtor-in-Possession
23

24

25

26

27

28

## DECLARATION OF DENNIS SHOGREN

I, Dennis Shogren, hereby declare and state as follows:

1.    I am the Chief Executive Officer of Modtech, Holdings, Inc., a Delaware corporation, the debtor and debtor-in-possession herein (the "Debtor"). The facts stated herein are within my personal knowledge, whether acquired directly, or through my familiarity with the Debtor's books and records in my capacity as an officer. The opinions expressed herein represent the opinions of the Debtor entity, of which I am an authorized agent, unless otherwise indicated.

2.    A copy of the Settlement Agreement and Mutual Release (the "Agreement") between the Debtor and J&T is attached hereto as Exhibit "1."

3.    J&T is a plastering subcontractor to the Debtor on an elementary school project located in Watsonville, California, known as the Landmark Elementary School. Modtech alleges that there were issues with the quality of workmanship regarding the work performed by J&T at the school. J&T attempted to correct the problems, but was unable to do so to the satisfaction of the Debtor and the owner of the school. Accordingly, on May 15, 2008, after efforts were made to resolve the stucco issues with J&T, the Debtor filed the State Court Action against J & T for breach of contract and other theories.

4.    Specifically, the Debtor contends that the stucco systems provided by J&T were defective in labor, materials and workmanship, and not in conformance with the plans and specifications, or the standard of care in the industry for such application. The Debtor sought reimbursement of the sums it had to credit/pay out to the owner in connection with this issue in the sum of $142,360.00. Furthermore, the Debtor seeks recovery of the sum of $45,139.72 as a 1/8 share of the attorney's fees, costs and expert fees it incurred in the underlying action with the owner, which represents a fair evaluation of those fees, costs and expenses attributable to the stucco issue. Finally, the Debtor, in accordance with the terms of the written subcontract agreement, sought recovery of any attorney's fees, costs and expert expenses incurred in prosecuting this action against J&T.

5.    While the Debtor contends that it had a high probability of successfully proving at trial that J&T's work at the subject school was deficient, and that the Debtor's out-of-pocket costs,

1   and other damages were reasonable, there remained the possibility that the Debtor might not

2   recover all of the damages it sought against J&T had it proceeded forward, and the settlement

3   amount took that into consideration.

4         6.    The significant reason for the Debtor's decision to settle, rather than litigate its

5   claims at trial with J&T had to do specifically with the problems of collection. All information

6   available highly suggested that even if the Debtor were successful in obtaining a judgment against

7   J&T for the full amount, including legal fees and costs, J&T did not have the financial ability to

8   satisfy the judgment, at any dollar amount. The Debtor's litigation counsel was successful in

9   getting J&T's insurance carrier involved in the matter, and based upon the language of the policy,

10  the Debtor was further successful in obtaining an offer from the carrier on behalf of J&T to pay the

11  settlement sum, which the Debtor contends is in the range of the insurance carrier's responsibility,

12  given the policy limitations relating to work product exclusion, etc.

13        7.    The issues to be decided at trial, if the matter were to proceed to trial, would have

14  related to the quality of the stucco work performed by J&T, the remediation necessary to bring the

15  quality of the work up to reasonable standards, and the cost of such remediation. I am informed

16  that this was going to require expert testimony, and was expected to take 3-4 days to try. If in fact

17  the matter were to proceed to trial, I am informed it was expected to cost between $15,000 and

18  $20,000 in fees and costs.

19        I declare that the foregoing is true and correct under the penalty of perjury.

20        Executed this 12 day of May 2009, in Perris, California.

21

22                      Dennis Shogren

23

24

25

26

27

28

# EXHIBIT "1"

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is made and entered into by and between Modtech Holdings, Inc. ("Modtech") and J & T Plastering, Inc. ("J & T"). Modtech and J & T will collectively be referred to as the "Settling Parties."

## RECITALS

A.    There is presently pending before the Los Angeles County Superior Court, a matter entitled **Modtech Holdings, Inc. v. J & T Plastering, Inc.**, Case No. BC390871, which consists of a Complaint by Modtech against J & T pertaining to the Landmark Elementary School Project (the "Action").

B.    To avoid the expense and uncertainty of litigation, and for other valuable consideration, the receipt and adequacy of which is hereby acknowledged, it is the mutual intention of the Settling Parties that all claims and disputes between them of any kind or nature whatsoever be fully and finally settled and, except for the limitation on releases and executory provisions of this Agreement, that no Settling Party to this Agreement be at any further risk or exposure to one another with respect to the Action, the subject matter of the Action, or the investigation, commencement, maintenance, defense or settlement of the Action.

## AGREEMENT

The Settling Parties hereby agree as follows:

1.    Payment to Modtech

J & T agrees to pay the total lump sum of $75,000.00 to Modtech. Payment will be made by check made payable to "the Monteleone & McCrory LLP Client Trust Account", and will be paid within ten (10) days of execution of this agreement by J & T. The payment shall be presented to Eric C. Smith at Monteleone & McCrory LLP, located at 725 S. Figueroa Street, Suite 3200, Los Angeles, California, 90017.

2.    Dismissal of Action

Within seven (7) days after receipt of "cleared funds" in the amount of $75,000.00, Modtech agrees to prepare and file a Request for Dismissal of the Action with prejudice.

3.    Limited Mutual Release of Claims

Upon completion of all of the terms, conditions and obligations set forth within this Agreement, Modtech and J & T and each of their respective parent corporations, affiliated corporations, subsidiaries, directors, officers, shareholders, partners, agents and representatives hereby fully release and forever discharge each other and their respective agents, representatives,

1

proprietors, partners, officers, directors, shareholders, all parent corporations, affiliated corporations, divisions, subsidiaries, employees, former employees, attorneys and insurers from any and all claims, demands, damages, debts, liabilities, accounts, obligations, costs, expenses, liens, actions, causes of action of any nature whatsoever, which are presently known or unknown, or which they now have or may hereinafter have against one another arising out of, or relating to, or in connection with the transactions, occurrences, acts, omissions and/or events alleged in, or which could have been alleged in the Action.

4.    Waiver of Civil Code Section 1542

The Agreement set forth herein constitutes a waiver by each and every Settling Party of any rights or benefits which any Settling Party has or may have by virtue of the provisions of Section 1542 of the Civil Code of the State of California as it relates to the Lawsuit and the subject matter of the Lawsuit, only. Civil Code Section 1542 reads as follows:

"Civil Code Section 1542: Claims Extinguished. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

In connection with such waiver and relinquishment, each Settling Party to this Agreement acknowledges that each is aware that he or his attorney may hereafter discover facts different from or in addition to those which he or his attorney now knows or believes to be true with respect to the subject matter of this Agreement and it is his intention that this release remain in effect notwithstanding any different or additional facts.

5.    No Assignment

Each Settling Party hereto represents and warrants to each and every other Settling Party hereto that no portion of any claim, demand, cause of action or other matter released herein has been assigned or transferred to any other person or entity, either directly or by way of a subrogation or operation of law. Each Settling Party to this Agreement hereby agrees to indemnify, defend, and hold harmless each and every other Settling Party herein from all losses, costs, claims or expenses of investigation in defense, including reasonable attorney's fees and costs arising out of any claim made or action instituted by any person or entity who claims to be a beneficiary of such assignment or transfer, or to pay or satisfy any judgment resulting from any such claim or action. It is the intention of the Settling Parties to this Agreement that indemnity under these circumstances does not require payment as a condition precedent to recovery under this provision.

6.    No Admission

Each and every Settling Party to this Agreement understands and agrees that neither the payment of money, the dismissal of the Lawsuit, nor the execution of the Agreement, shall

2

13

constitute or be construed as an admission of any liability whatsoever by any Settling Party to this Agreement, each Settling Party consistently taking the position that it has no liability whatsoever to any other Settling Party, or any other party to the Lawsuit.

7.    No Representations

Each Settling Party hereto acknowledges that each has relied solely upon his own judgment, belief and knowledge relative to the existence, nature and extent of each claim, demand, or cause of action that Settling Party may have against another Settling Party or Parties to this Agreement from which said Settling Party is hereby released, and that Settling Party has not been coerced or influenced to any extent in entering into this Agreement by the conduct, representations or statements of any other Settling Party hereto or any third party. Each Settling Party acknowledges that he is executing this Agreement after having received from independent counsel of Settling Party's own choosing, legal advice as to his rights hereunder and the legal effect thereof. Each Settling Party acknowledges, warrants and represents that he is voluntarily executing this Agreement of Settling Party's own free will, and is not acting pursuant to any coercion, duress, undue influence, or other infirmity or other impairment whatsoever.

8.    Successors and Assigns

This Agreement shall be binding upon an inure to the benefit of the Settling Parties and their heirs, executors, administrators, successors, assigns, agents, employees and representatives.

9.    Entire Agreement

It is expressly understood and agreed by all Settling Parties to this Agreement that this document contains the entire agreement and understanding of the Settling Parties concerning the Lawsuit, dismissal thereof, and the subject matter therein, and supersedes and replaces all prior negotiations and agreements between the Settling Parties hereto, whether written or oral. Settling Parties hereto acknowledge that they have read this Agreement and have executed it without relying upon any statements, representations or warranties whether written or oral, not expressly set forth herein.

10.    Waiver, Modification and Amendment

No waiver, modification or amendment of this Agreement shall be effective against any Settling Party to this Agreement unless in writing and executed by all parties to this Agreement.

11.    Construction of Agreement

The language of this Agreement shall be construed as a whole, according to its fair

3

meaning and intendment, regardless of who was principally responsible for drafting any specific term or condition hereof. This Agreement shall be deemed to have been drafted by all Settling Parties hereto, and no Settling Party shall urge otherwise.

12.    Attorney's Fees and Costs

The Settling Parties hereto agree that each of the Settling Parties shall bear his own attorney's fees, expenses and costs incurred in connection with the Action, the disputes which gave rise to the Action, and the preparation of this Agreement. In the event that there should be litigation arising out of the breach of this Agreement, or in the event there should be litigation to enforce or interpret this Agreement, the parties hereto agree that the prevailing Settling Party shall be entitled to recover its reasonable attorney's fees, costs and expenses actually incurred with such litigation from the losing Settling Party or parties.

13.    Governing Law

This Agreement is made and entered into in the State of California and shall in all respects be interpreted and enforced by and under the laws of this state.

14.    Counterparts

This Agreement may be executed in multiple counterpart copies, each of which shall be deemed an original.

15.    Gender

The use of the masculine gender herein is to be interpreted to include the feminine and neuter genders, and its use herein is only as a matter of convenience.

16.    Bankruptcy Court Approval

The settling parties understand and agree that the effectiveness and enforceability of this Agreement is conditioned upon approval of the bankruptcy court in which the Modtech bankruptcy is currently pending.

**IN WITNESS WHEREOF**, the Settling Parties have executed this Agreement on the day and year indicated below.

4

J & T PLASTERING, INC.,
a California corporation

DATED: _____, 2009

_____
By:

MODTECH HOLDINGS, INC.,
a Delaware corporation

DATED: _____, 2009

_____
By:

APPROVED AS TO FORM AND CONTENT:

MONTELEONE & MCCRORY LLP

_____
By: Eric C. Smith
Attorneys for plaintiff
MODTECH HOLDINGS, INC.

VANDERFORD & RUIZ LLP

_____
By: Robert Hanff
Attorneys for defendant
J & T PLASTERING, INC.

5

16

Case 6:08-bk-24324-TD    Doc 260    Filed 05/12/09    Entered 05/12/09 13:48:04    Desc
Main Document        Page 18 of 22
Apr 23 2009 1:10PM    JT    .ASTERING            1562   3259            p.7

From: 1287                626 405 8868        04/16/2009 14:08    #098 P.007/007

DATED: 4 - 23 - _____, 2009

By: _____

MODTECH HOLDINGS, INC.,
a Delaware corporation

DATED: _____, 2009

By: _____

APPROVED AS TO FORM AND CONTENT:

MONTELEONE & MCCRORY LLP

_____
By: Eric C. Smith
Attorneys for plaintiff
MODTECH HOLDINGS, INC.

VANDERFORD & RUIZ LLP

By: Robert Hanff
Attorneys for defendant
J & T PLASTERING, INC.

5

17

APR-20-2009 09:14 FROM: 951940042?    TO: 99433725    P.1/1

a Delaware corporation

DATED: _April 20_, 2009

By: DENNIS L. SHOLGREN
PRES P CEO

APPROVED AS TO FORM AND CONTENT:

MONTELEONE & MCCRORY LLP

By: Eric C. Smith
Attorneys for plaintiff
MODTECH HOLDINGS. INC.

VANDERFORD & RUIZ LLP

By: Robert Hanff
Attorneys for defendant
J & T PLASTERING. INC.

5

18

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as DEBTOR'S MOTION FOR ORDER APPROVING COMPROMISE OF CONTROVERSY WITH J&T PLASTERING, INC; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT THEREOF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On May 12, 2009, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On May 12, 2009 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____
___ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Counsel to J&T Plastering:  Robert Hanff, Esq. – rhanff@vrlawyers.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 12, 2009 | Viann Corbin | |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

NEF SERVICE LIST

- Peter C Califano    pcalifano@cwclaw.com
- Scott C Clarkson    sclarkson@lawcgm.com
- Helen R Frazer    hfrazer@aalrr.com
- Jeanne M Jorgensen    jjorgensen@pj-law.com
- J Michael Kelly    kellyjm@cooley.com
- Jennifer Leland    jleland@pwkllp.com
- Leib M Lerner    leib.lerner@alston.com
- Charles Liu    cliu@winthropcouchot.com
- Elizabeth A Lossing    elizabeth.lossing@usdoj.gov
- Richard A Marshack    rmarshack@shbllp.com, pkraus@marshackhays.com
- Frank F McGinn    ffm@bostonbusinesslaw.com
- Lawrence Peitzman    lpeitzman@pwkllp.com
- Jeffrey N Pomerantz    jpomerantz@pszjlaw.com
- Dean G Rallis Jr    dean.rallis@alston.com
- Todd C. Ringstad    becky@ringstadlaw.com
- Kirsten A Roe    kroe@wthf.com, dfunsch@wthf.com
- Scott A Schiff    sas@soukup-schiff.com
- Yaron Shaham    yshaham@wolfewyman.com
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov
- Andrea M Valdez    avaldez@fulbright.com
- Scott Williams    swilliams@manierherod.com, mfranks@manierherod.com;tpennington@manierherod.com
- Marc J Winthrop    pj@winthropcouchot.com
- Robert M Yaspan    tmenachian@yaspanthau.com, rmyaspanlaw@aol.com

## SERVICE BY FIRST CLASS MAIL

Modtech Holdings, Inc.,
Dennis L. Shogren, Pres & CEO
2830 Barrett Ave.
Perris, CA 92571

Office of the U.S. Trustee
Elizabeth Lossing, Esq.
3685 Main Street, Suite 300
Riverside, CA 92501

Modtech
Special Notice List/20Largest/Secured
Document No. 124243

Committee Counsel
Richard Marshack, Esq.
Marshack Hays LLP
5410 Trabuco Road, Suite 130
Irvine, California. 92620

Peitzman Weg & Kempinsky LLP
Lawrence Peitzman, Esq.
10100 Santa Monica Blvd #1450
Los Angeles, CA. 90067

10/22/08 RSN
Palos Verdes Peninsula USD, Coachella Valley USD; Sierra Sands USD
Atkinson, Andelson, Loya, Ruud & Romo
Helen Ryan Fraver, Esq.
17871 Park Plaza Dr., #200
Cerritos, CA 90701

RSN 10/23/08
Liberty Mutual Insurance Company
c/o Manier & Herod
J. Michael Franks, Esq.
Thomas T. Pennington, Esq.
One Nashville Place, #2200
Nashville, TN 37219

RSN 10/23/08
Liberty Mutual Insurance Company
c/o Watt, Tieder, etc.
Robert C. Niesley, Esq.
Kirsten Roe, Esq.
2040 Main St., #300
Irvine, CA 92614

RSN 10/28/08
Laurus Master Fund, Ltd., et al.
c/o Pachulski Stang Ziehl & Jones LLP
Jeffrey N. Pomrantz, Esq.
10100 Santa Monica Blvd., 11th Fl.
Los Angeles, CA. 90067-4100

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cooley Godward
Attn: Corporate Officer
101 California St., 5th Fl.
San Francisco, CA 94111

Secured Creditor
Bear Forest Products, Inc.
4685 Brookhollow Cir
Riverside, CA USA 92509-3071

Secured Creditor
U.S. Bank National Association
1 US Bank Plz
Saint Louis, MO 63101

Secured Creditor
NMHG Financial Services, Inc.
10 Riverview Dr
Danbury, CT 06810-6268

Secured Creditor
U.S. Bank National Association
1 US Bank Plaza 7th & Washington
Saint Louis, MO 63101

Secured Creditor
Citicorp Vendor Finance, Inc.
PO Box 728
Park Ridge, NJ 07656-0728
11/12/2008 -- See New Address
Below

Securities & Exchange Commission
Sarah D. Moyed, Esq.
5670 Wilshire Blvd., 11th Fl.
Los Angeles, CA 90036

Premium Financing Specialists of CA.
Inc.
c/o Rod Hoffman, Esq.
Slagle, Bernard & Gorman
600 Plaza West Builfinh
4600 Madison Ave.
Kansas City, MO 64112-3031

Attorneys for Johannessen Trading
Company
Samuel A. Wyman, Esq./Eric T. Lamhofer
Yaron Shaham
WOLFE & WYMAN LLP
5 Park Plaza, Suite 1100
Irvine, CA 92614-5979

RSN 10/29/08
Travelers
Scot Freeman, Account Resolution
One Tower Square, 5MN
Hartford, CT 06183

RSN 10/31/08
Ventures V Plant City, LP
c/o Fulbright & Jaworski LLP
Michael M. Parker, Esq.
300 Covent St., #2200
San Antonio, TX 78205-3792

RSN 10/31/08
Ventures V Plant City, LP
c/o Fulbright & Jaworski LLP
Robert E. Darby, Esq.
555 S. Flower St., 41st Fl.
Los Angeles, CA 90071

Retd mail 11/12/08
Citicapital
Attn: Corporate Officer
10201 Centurion Pkwy N., #100
Jacksonville, FL 32256-4114

Jeanne M. Jorgensen, Esq.
5160 Campus Dr.
Newport Beach, CA 92660

12/4/08RSN
Michelle Kaufman Homes, Inc.
c/o Cooper, White & Cooper LLP
Peter C. Califano, Esq.
201 California St., 17th Fl.
San Francisco, CA 94111

11/17/08 RSN
Ferguson Enterprises
c/o George Sykulski, Esq.
16027 Ventura Blvd., Suite 503
Encino, CA 91436

RSN 12/10/08
Gust Rosenfeld, PLC
Attn: Madeleine C. Wanslee, Esq.
201 E. Washington, #800
Phoenix, AZ 85004-2327

RSN 1/12/09
Silver Creek Industries, Inc.
c/o Ringstad & Sanders, LLP
Todd C. Ringstad, Esq.
2030 Main St., 12th Fl.
Irvine, CA 92614

Johannessen Trading Company  RSN2/2/09
c/o Samuel A. Wymen, Esq., Erick T. Lamhofer,
Esq., Yaron Shaham
Wolfe & Wyman
5 Park Plaza, #1100
Irvine, CA 92614-5979

2/17/09 RSN
Construction Laborers Trust Funds for
SoCal Administrative Co. LLC
c/o Marsha M. Hasasaki, Esq.
Reich Adell & Cvitan
3550 Wilshire Blvd., #2000
Los Angeles, CA 90010

Rsn 2/27/09
Cooley Godward Kronish LLP
J. Michael Kelly, Esq.
101 California St., 5th Fl.
San Francisco, CA 94111-5800

3/5/09 RSN
The Rosenfield Family Trust
Robert M. Yaspan, Esq.
c/o The Law Offices of Robert M. Yaspan
21700 Oxnard Street, #1750
Woodland Hills, CA 91367

3/31/09 RSN
Cal Mira Mesa, Ltd.
c/o Margaret Kathryn Maas, Prof Law
Corp.
110 Avenida Serra
San Clemente, CA 92672

4/21/09 RSN
Bart Barringer
Law Offices of Mayol & Barringer
PO Box 3049
Modesto, CA 95353